# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| TIM MAGURA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:15-CV-289-PRC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tim Magura on August 3, 2015, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed by Plaintiff on February 5, 2016. Plaintiff requests that the Court reverse the December 18, 2014 decision of the Appeals Council denying him disability insurance benefits and make a direct award of benefits or remand for further proceedings. For the following reasons, the Court grants the request to remand for further proceedings.

## PROCEDURAL BACKGROUND

On July 23, 2012, Plaintiff Tim Magura filed an application for disability insurance benefits, alleging disability beginning June 20, 2006. The claim was denied initially and on reconsideration. On April 4, 2014, a hearing was held before Administrative Law Judge ("ALJ") Dennis R. Kramer. Plaintiff amended his alleged onset date to July 15, 2008. On May 5, 2014, the ALJ issued a decision finding that (1) Plaintiff was disabled within the meaning of the Social Security Act from July 15, 2008, through November 30, 2010, (2) on December 1, 2010, medical improvement occurred that is related to ability to work and Plaintiff was able to perform substantial gainful activity until a date certain in December 2011, and (3) Plaintiff was again disabled, this time by operation of law on the

date in December 2011 based upon non-mechanical application of the framework of the grid rules.

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since the amended alleged onset date.

3. Since the amended alleged onset date of disability, July 15, 2008, the claimant has had the following severe impairments: a history of lumbar fusions with an unstable lumbar spine, Barret's esophagus, a hiatal hernia, and a history of a left upper extremity forearm fracture.

4. From July 15, 2008, the amended alleged onset date, through November 30, 2010, the claimant's lumbar spine impairment medically equaled Listing 1.04 in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant was under a disability, as defined by the Social Security Act, from July 15, 2008 through November 30, 2010.

6. The claimant has not developed any new impairment or impairments since December 1, 2010, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as those present from July 15, 2008 through November 30, 2010.

7. Since December 1, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

8. Medical improvement occurred as of December 1, 2010, the date the claimant's disability ended.

9. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.

10. After careful consideration of the entire record, the undersigned finds that since December 1, 2010, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can continuously and frequently lift and carry up to ten pounds, occasionally lift and carry up to fifteen pounds, sit for two hours at a time, stand/walk for thirty minutes at a time, sit for six hours in an eight-hour workday,

stand/walk for a combination of two hours in an eight-hour workday with all walking being at a slow pace without the need for use of a cane, he cannot walk a block at a reasonable pace on a rough or uneven surface, he can frequently reach, handle, finger, feel, push, and pull with the bilateral upper extremities, frequently operate foot controls with the feet, never climb ladders, ropes, scaffolds, ramps, or stairs, balance, stoop, crouch, or crawl, occasionally kneel, and he is further limited to work which never requires exposure to vibration, unprotected heights, moving mechanical parts, or operation of a commercial vehicle, requires no more than occasional exposure to extreme cold or heat, no concentrated exposure to dust, odors, fumes and pulmonary irritants, and no more than moderate exposure to noise.

11. Since December 1, 2010, the claimant has been unable to perform any past relevant work.

12. From December 1, 2010 until December [ ], 2011, the claimant was a younger individual age 45-49. Applying the age categories non-mechanically, and considering the additional adversities in this case, on December [ ], 2011, the claimant's age category changed to an individual closely approaching advanced age.

13. The claimant has at least a high school education and is able to communicate in English.

14. From December 1, 2010 to December [ ], 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on December [ ], 2011, the claimant has not been able to transfer job skills to other occupations.

15. From December 1, 2010 to December [ ], 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

16. Beginning on December [ ], 2011, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform.

17. The claimant was disabled from July 15, 2008 through November 30, 2010. The claimant was not disabled from December 1, 2010 until December [ ],

>     2011, but became disabled on that date and has continued to be disabled
>     through the date of this decision.

(AR 24-35).

On November 13, 2014, the Appeals Council notified Plaintiff that it had reviewed the ALJ's decision and planned to change the ALJ's decision. The Appeals Council found that the ALJ's decision was incorrect and that Plaintiff was not entitled to disability insurance benefits. The Appeals Council concluded that Plaintiff was not entitled to payment of benefits from July 15, 2008, through November 30, 2010, because, although the ALJ found him disabled during that time, that closed disability period ended more than one year prior to Plaintiff filing his application on July 23, 2012. The Appeals Council held that a claimant cannot be found disabled for a closed period if that period ended more than 12 months prior to filing an application. As a result, the Appeals Council found that Plaintiff's date last insured was December 31, 2009, and, thus, Plaintiff was not entitled to disability insurance benefits for a period of disability beginning after December 2011. The Appeals Council then wrote:

> The evidence does not show that you were disabled from December 1, 2010 through December [ ], 2011 and a closed period of disability cannot be established from July 15, 2008 through November 30, 2010 because it ended more than twelve months before you applied for disability benefits.

(AR 174).

On December 18, 2014, the Appeals Council rendered its final decision, denying Plaintiff disability insurance benefits. In the decision, the Appeals Council noted that the ALJ found that the claimant was disabled between July 15, 2008, and November 30, 2010, that he was not disabled from December 1, 2010, through a date in December 2011, and that he was disabled again after that date in December 2011. The Appeals Council also noted that the ALJ found Plaintiff insured for

4

benefits through June 30, 2012, having accounted for the closed period of disability. The Appeals Council concluded that Plaintiff was not entitled to benefits for the closed period because that period ended more than twelve months before he applied for benefits and that, as a result, his last date insured was now the earlier date of December 31, 2009. The Appeals Council made the following findings:

> 1. The claimant applied for a period of disability and disability insurance benefits on July 23, 2012.
>
> 2. The claimant cannot be entitled to a closed period of disability ending November 30, 2010 because it ended more than twelve months before he applied for benefits.
>
> 3. The claimant's date last insured for disability benefits is December 31, 2009.
>
> 4. The claimant was not continuously disabled prior to December [ ], 2011.
>
> 5. The claimant is not insured for disability benefits on December [ ], 2011, the date he became disabled.

Because the Appeals Council reviewed the ALJ's decision, rendering its own findings and conclusions, the Appeals Council's decision is the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; *see also White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992).

On August 3, 2015, Plaintiff filed the Complaint in this case.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

The regulations provide that, if a claimant does not request review of the ALJ's decision within the stated time period, the claimant loses the right to further review and the ALJ's decision becomes final. 20 C.F.R. § 404.987(a); 20 C.F.R. § 404.969. However, the Appeals Council may reopen and revise an otherwise final and binding decision for any reason within twelve months of the date of the decision. *Id.*; 20 C.F.R. § 404.988(a). The Appeals Council's decision may be appealed in an action in a federal district court within sixty days after the claimant receives notice of the action. 20 C.F.R. § 404.981.

Unlike most disability insurance benefit cases this Court reviews, Plaintiff did not appeal the ALJ's decision to the Appeals Council. (Plaintiff was likely pleased to have been found not disabled for only the approximate one-year period from December 1, 2010 through the date in December 2011 that he again became disabled.) Rather, the Appeals Council decided to reopen Plaintiff's case after its own review. In this appeal of the Appeals Council's final decision, Plaintiff does not dispute the Appeals Council's holding that the ALJ erred by awarding benefits for a closed period of disability (July 15, 2008, through November 30, 2010) that ended more than a year before Plaintiff filed his application for benefits on July 23, 2012. Rather, Plaintiff asserts that the Appeals Council's decision was legally insufficient in its discussion of the facts and that, if this Court finds the Appeals Council decision sufficient by having implicitly incorporated the ALJ's decision, the ALJ's decision was not supported by substantial evidence.

When the ALJ found Plaintiff disabled for the closed period from July 15, 2008, through November 30, 2010, the date last insured became June 30, 2012, to account for the closed period of disability. However, once the finding of disability for the closed period was reversed, the extension

9

of the date last insured was no longer applicable, and the date last insured became December 31, 2009.

As a result of the reversion of the date last insured to December 31, 2009, the ALJ's finding that Plaintiff was disabled after December 2011 based on the grid no longer entitled Plaintiff to benefits because he was no longer insured at the time he became disabled in December 2011.

In its decision, the Appeals Council did not engage in any analysis of whether Plaintiff was disabled, focusing entirely on the procedural error regarding the closed period of disability. The entirety of the Appeals Council's consideration of whether Plaintiff was disabled is the statement in its November 2014 letter: "The evidence does not show that you were disabled from December 1, 2010 through December [ ], 2011 . . . ." (AR 174). Thus, without any direct finding or discussion, the Appeals Council implicitly upheld the ALJ's determination that Plaintiff was not disabled from December 1, 2010, through December 2011. Notably, if the Appeals Council had reviewed the ALJ's decision and reversed the finding of not disabled from December 1, 2010, through December 2011, and found that Plaintiff continued to be disabled after December 1, 2010, then there would not have been a closed period of disability, Plaintiff's claim would not have been denied as untimely filed, and Plaintiff would have been found disabled for the entire period, including after December 2011. Therefore, the Appeals Council's decision to uphold the ALJ's finding of not disabled for the period of December 1, 2010, through December 2011 is central to this appeal.

Because of this unique procedural history, Plaintiff now finds himself in the position of challenging the determination that he was not disabled for the period of December 1, 2010, through December 2011. Plaintiff first argues that the Appeals Council's decision is legally insufficient

because it neither included findings of fact and analysis to support its conclusions nor did it expressly incorporate the findings and conclusions of the ALJ in its decision.

As noted above, Plaintiff is correct that the Appeals Council's decision itself contains no findings of fact or analysis of the evidence of record. Although the Appeals Council explicitly "incorporate[d] the Administrative Law Judge's statement of the evidence in this case, and his references to provisions of the Social Security Act and the regulations of the Social Security Administration," (AR 12), the Appeals Council did not explicitly incorporate the ALJ's analysis of the facts or weighing of the evidence. As a result, there is no analysis by the Appeals Council for the Court to review to determine whether the decision that Plaintiff is not disabled from December 1, 2010, through December 2011 is supported by substantial evidence.

However, in the interests of justice and the expedient review of Plaintiff's case, the Court finds that the Appeals Council implicitly incorporated all of the ALJ's findings into its decision. And, having reviewed the ALJ's decision, the Court finds that the determination that Plaintiff was not disabled from December 1, 2010, through December 2011 is not supported by substantial evidence and that remand for further proceedings is required.

In finding that Plaintiff was disabled for the closed period of July 15, 2008, through November 30, 2010, the ALJ relied on the opinion of the medical expert, Dr. Farmati, to find that Plaintiff medically equaled Listing 1.04. However, for the period beginning December 1, 2010, through the date in December 2011 when Plaintiff became disabled based on the grid, the ALJ found that Plaintiff had medical improvement and no longer met the Listing. In support, the ALJ reasoned that there is no diagnosis of spinal arachnoiditis, treating physician Steven Corse, M.D.'s treatment notes do not contain evidence of objective findings required to meet or medically equal Listing 1.04,

11

such as positive straight-leg-raise tests in the seated and supine position, or evidence of quantifiable weakness or sensory loss in the bilateral lower extremities, and signs of atrophy. The ALJ also noted that the notations of gait antalgia noted in objective medical evidence received from Rajive K. Adlake, M.D., and Donald Kucharzyk, D.O., during the period prior to December 1, 2010, do not persist after that date.

The ALJ then made the finding that "medical improvement" occurred as of December 1, 2010. (AR 29 (citing 20 C.F.R. 404.1594(b)(1)). The ALJ held that, "[a]s of December 1, 2010, the claimant had experienced medical improvement directly relating to his previously disabling lumbar spine disorder." (AR 29). The ALJ reasoned that the treatment record of Dr. Kucharzyk, dated November 8, 2010, indicated that though Plaintiff still had some soreness, he was "doing better" and that he stated he could "stay on his feet longer." *Id.* (citing AR 338). The ALJ noted that Dr. Kucharzyk assessed Plaintiff's lumbar range of motion as "very good," gait as "normal," sensory and motor exams grossly normal, and bilateral lower extremities straight-leg-raise testing as negative. *Id.* The ALJ also noted that Dr. Kucharzyk indicated that Plaintiff denied any radiating or radicular pains in either leg and that Dr. Kucharzyk opined that "[i]n general, the current spine problem is much better since its onset." *Id.* And, the ALJ noted that subsequent treatment notes from Dr. Corse indicate only a continuation of Plaintiff's medication regimen for low back pain, including Methadone, through the end of 2010. *Id.* (citing Ex. 10F generally).

This finding of medical improvement is not supported by substantial evidence. *See Albertsen v. Colvin*, No. 13 C 3509, 2016 WL 4417068, at *9 (N.D. Ill. Aug. 17, 2016). "Medical improvement" is defined as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or

continue to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1); *see Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *Mulligan v. Astrue*, 336 F. App'x 571, 577 (7th Cir. 2009). The ALJ is not permitted to base a finding of medical improvement on a single medical record. Instead, he must compare the medical reports that reflect the ALJ's finding of improvement with the medical reports of the time when the claimant was found disabled. *Yousif v. Chater*, 901 F. Supp. 1377, 1385 (N.D. Ill. 1995) ("[M]edical improvement must be based not on a single report . . . but rather on a comparison between the medical reports that reflect an allegedly 'improved' claimant and the medical reports at the time of the most favorable decision of disability."); *see also Hickey v. Colvin*, No. 13 C 7857, 2015 WL 3929642, at *5 (N.D. Ill. June 25, 2015) (citing *Yousif*, 901 F. Supp. at 1385); *Lymperopulos v. Astrue*, No. 09 C 1388, 2010 WL 960340, at *8 (N.D. Ill. Mar. 10, 2010) (same). The ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

Plaintiff's reports, on November 8, 2010, that he was "doing better," did not have radiating pain in his legs, and could "stay on his feet longer," did not offer substantial support that Plaintiff had reached medical improvement under the regulations. The Seventh Circuit Court of Appeals has repeatedly recognized that those who suffer from a chronic illness, including chronic pain, and are under the treatment of significant pain medication often experience fluctuating symptoms. *See, e.g.*, *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2009); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Such fluctuating symptoms do not demonstrate ongoing, sustained, improvement in a claimant's impairments. Plaintiff reported having both good and bad days, (AR 382 (5/13/2009), 386

(4/20/2009)), and the ALJ must consider both a claimant's good and bad days when evaluating a claimant's disability claim. *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012) ("[Plaintiff's] RFC should not have been measured exclusively by her best days; when a patient like Farrell is only unpredictably able to function in a normal work environment, the resulting intermittent attendance normally precludes the possibility of holding down a steady job.").

The overall evidence from the treatment records of Dr. Kucharzyk and Dr. Corse document fluctuating symptoms. For example, Plaintiff reported initially feeling better in February 2009 after his surgery, (AR 394, 390), but had increased pain by April 2009, (AR 386). He reported feeling even worse in May 2009, (AR 382), better by June 2009, (AR 378), but then again suffering increased pain in early August 2009, (AR 374). By the end of August 2009 he reported feeling better, (AR 370), but by November 2009 he reported worse pain, (AR 366). Plaintiff reported some improvement in pain, after injections, in February and March 2010, (AR 350, 354, 358), but by July 2010 he reported increased pain again, (AR 563). On January 21, 2011, Plaintiff, reported increased pain for two to three weeks. His Methadone dosage was increased, (AR 565), and then was increased again in May 2011, (AR 566). The evidence, both prior to, and after, December 1, 2010, document fluctuating symptoms, without ongoing, sustained, symptom improvement.

The ALJ's reliance upon Dr. Kucharzyk's November 2010 notes, indicating "very good" lumbar spine range of motion, "normal" gait, and normal sensory and motor examinations also do not offer substantial support to the ALJ's conclusion that Plaintiff's condition had medically improved. Although Dr. Kucharzyk indicated that Plaintiff had "very good" range of motion, his treatment notes that day document 75 degrees forward bend, 20 degrees back bend, and 20 degrees side bend. (AR 339). However, he had the same lumbar range of motion in July 2010, (AR 343),

14

during a time both Dr. Farmati and the ALJ found that Plaintiff was disabled under Listing1.04. In addition, Plaintiff consistently demonstrated a normal gait in appointments prior to the November 2010 examination. (AR 343, 351, 359, 371, 375, 383, 387). The examination in July 2010, like in November 2010, documents no sensory or motor loss. (AR 340, 344). Similarly, the examination in July 2010 also documented negative straight leg raise testing. (AR 344). Thus, the November 2010 examination findings that the ALJ relied upon to find medical improvement are not distinguishable from the prior relevant examination findings during the period of disability.

Further, the ALJ erred in finding that Dr. Corse had merely continued Mr. Magura's pain medications. Dr. Corse's treatment records document increases in Plaintiff's Methadone dosages, in an effort to manage Plaintiff's pain, including in January 2011, only a month after the date by which the ALJ found that Plaintiff's condition had medically improved, (AR 565), and then again in March 2011, (AR, 556), May 2011, (AR, 566), and September 2011, (AR. 554). Dr. Corse's persistent attempts to control Plaintiff's pain by increasing his medication dosage, throughout 2011, undermines a finding of improvement in December 2010.

In finding disability from July 2008 through November 30, 2010, the ALJ relied upon Dr. Farmati's opinion that Plaintiff's condition medically equaled the severity of Listing 1.04, due to the severity of Plaintiff's pain and motion problems. (AR 28). However, Plaintiff did not stop reporting pain in December 2010. *See* (AR 549, 550, 551, 552, 554, 556, 557, 558, 560, 561, 563, 565, 566, 567, 571, 617, 618, 621, 622, 624). And, as noted, Plaintiff did not demonstrate any change in lumbar range of motion as of the November 2010 treatment notes, (AR 339-40), compared with the prior note in July 2010, (AR 343-44). Again, Dr. Corse's treatment notes document several increases in Plaintiff's pain medication, often between 10 and 13 doses of hydrocodone each day,

15

(AR 556, 566, 568, 622, 623), compared to the 8 doses that Dr. Adlaka had been prescribing throughout 2009 and into 2010, (AR 320, 324, 326, 329, 331), the period in which Dr. Farmati opined that Plaintiff equaled Listing 1.04. The ALJ not only failed to offer evidence that Plaintiff's condition had improved but, more specifically, failed to offer support for his conclusion that Plaintiff's condition had improved in the areas supporting the medical expert's testimony that Plaintiff's condition equaled Listing 1.04.

The ALJ's conclusion that Dr. Kucharzyk and Dr. Corse's treatment notes documented medical improvement was not supported by substantial evidence. Thus, because the Appeals Council implicitly incorporated all of the ALJ's conclusions into its own decision, the Appeals Council decision was also not supported by substantial evidence.

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required to allow the Agency to conduct a proper analysis of whether there was medical improvement.

On remand, should the case proceed past the Listing analysis for the period of December 1, 2010 through December 2011, the Agency is directed to consider the following issues raised by Plaintiff in this appeal. In assessing the RFC, the Agency is directed to consider and discuss Plaintiff's impairments in combination. Should Plaintiff be given the same RFC with a limitation to sedentary work with no stooping or balancing, the Agency is directed to question the vocational

expert specifically as to what extent the complete inability to stoop erodes the unskilled sedentary occupational base. When weighing treating physician opinions, the Agency is directed to 20 C.F.R. § 404.1527 and Social Security Ruling 96-2p, which require that a treating physician's opinion about the nature and severity of a claimant's impairments be given controlling weight as long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Finally, Social Security Ruling 16-3p has superseded Social Security Ruling 96-7p and eliminated the use of the term "credibility" from the sub-regulatory policy. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Thus, on remand, the Agency is directed to evaluate Plaintiff's complaints in accordance with the new ruling.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** the case for further proceedings.

SO ORDERED this 29th day of September, 2016.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT